UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| THE GRIGOLEIT COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-2126 |
| ) | |
| WHIRLPOOL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

On May 27, 2005, Defendant Whirlpool Corporation filed a Notice of Removal. Plaintiff Grigoleit Company had filed a Complaint on April 22, 2005, alleging breach of contract in the Macon County Circuit Court. On August 3, 2005, Grigoleit filed a Motion to Compel Arbitration and to Stay Pending Proceedings (#11). On August 17, 2005, Whirlpool filed a Motion for Judgment on the Pleadings (#24). Both matters are now fully briefed, and for the reasons that follow, Grigoleit's Motion to Compel Arbitration and to Stay Pending Proceedings is GRANTED and Whirlpool's Motion for Judgment on the Pleadings is denied as MOOT.

FACTS

Grigoleit is a manufacturer of appliance components. On June 11, 1993, Grigoleit entered into a License Agreement with Whirlpool, an appliance manufacturer. The License Agreement was entered into because Grigoleit believed certain knobs Whirlpool was purchasing from another knob supplier incorporated technology covered by two Grigoleit patents. Pursuant to the License

Agreement, Grigoleit granted Whirlpool the non-exclusive license to use certain knobs manufactured by Grigoleit. In exchange for granting this license, the parties agreed as follows:

> Whirlpool shall not be obligated to pay Grigoleit any monies as royalties for the right, license and privilege granted herein so long as Whirlpool continues to purchase from Grigloeit Whirlpool's requirement for present styling of knobs for the "Estate" and "Roper" brand lines of automatic clothes washers and dryers and so long as, in the opinion of an arbitrator established in accordance with the procedures of a recognized and independent arbitration service, Whirlpool continues to give serious consideration to Grigoleit by working with and purchasing from Grigoleit various appliance components, when in regards to such components it is reasonable to believe Grigoleit can provide more than parity in technology, quality, service, delivery and price in comparison to other qualified suppliers in the Whirlpool supplier base at such time.

The License Agreement expired by its terms on September 2, 2003. On April 20, 2005, Grigoleit forwarded a Demand for Arbitration to the American Arbitration Association (AAA). Because Grigoleit considered the scope of the arbitration allowed under the License Agreement to be limited, it filed its complaint in the Circuit Court of Macon County on April 22, 2005. In its complaint, Grigoleit asserts that Whirlpool breached the above quoted portion of the License Agreement. On May 6, 2005, counsel for Whirlpool notified Grigoleit's counsel that Whirlpool declined to submit to arbitration asserting the lack of any enforceable arbitration agreement and claimed Whirlpool was disinclined to litigate the same issues in separate forums. On May 27, 2005, Whirlpool removed the Macon County action to this court.

ANALYSIS

Grigoleit asserts that, pursuant to the terms of the License Agreement, a determination of the part numbers, nature, extent, and other relevant information of each of the components that Whirlpool Corporation failed, at various times, to purchase from Grigoleit during the term of the License Agreement must be determined in arbitration. Grigoleit asserts that a calculation of damages consisting of lost profits would be decided by a jury in this court. In its response, Whirpool argues that arbitration should not be compelled in the instant case because Grigoliet waived its right to arbitrate by waiting 19 months after the expiration of the License Agreement to bring its demand for arbitration.

"Federal policy favors the enforcement of private arbitration agreements." St. Mary's Med. Ctr. of Evansville, Inc., v. Disco Aluminum Prod. Co., 969 F.2d 585, 587 (7th Cir. 1992). Section 2 of the Federal Arbitration Act (FAA) provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the federal policy favoring arbitration is not absolute. One ground on which courts may refuse to enforce arbitration agreements is where one party waives its right to arbitrate. St. Mary's, 969 F.2d at 587. This waiver can be either express or inferred. St. Mary's, 969 F.2d at 587. However, due to the strong federal policy favoring arbitration, "waiver of arbitration is not lightly to be inferred." Midwest Window Sys. v. Amcor Indus., Inc., 630 F.2d 535, 536 (7th Cir. 1980).

Whirlpool does not argue Grigoleit expressly waived its right to arbitration, so this court must examine whether waiver can be inferred from Grigoleit's actions. A determination as to whether there is an inferred waiver depends on "the circumstances of each particular case." St.

Mary's, 969 F.2d at 588.  "The essential question is whether, based on the circumstances, the alleged defaulting party has acted inconsistently with the right to arbitrate."  St. Mary's, 969 F.2d at 588. "Although several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision – 'did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004), quoting Ernst & Young LLP v. Baker O'Neal Holdings, Inc., 304 F.3d 753, 757 (7th Cir. 2002).

In the instant case, Whirlpool argues that this court should imply waiver because: (1) Grigoleit waited an excessive amount of time in demanding arbitration; (2) Whirlpool will be prejudiced if required to arbitrate a claim implicating its sourcing decisions for all appliance components within a 10 year period; and (3) Grigoleit waived the right to arbitrate by filing a contemporaneous proceeding in state court at the time it filed its demand for arbitration.

With regard to the timeliness of Grigoleit's demand for arbitration, this court finds that such delay does not support a finding of waiver.  While Grigoleit waited nineteen months to make a demand for arbitration, the circumstances of the case would make it difficult for Grigoleit to be aware of any alleged breach of its License Agreement by Whirlpool.  The License Agreement required Whirlpool to give "serious consideration to Grigoleit by working with and purchasing from Grigoleit various appliance components, when in regards to such components it is reasonable to believe Grigoleit can provide more than parity in technology, quality, service, delivery and price in comparison to other qualified suppliers in the Whirlpool supplier base."  If Whirlpool never made a request for a quote from Grigoleit and selects a supplier for a component other than Grigoleit, Grigoleit would not be in a position to know of the potential breach of the License Agreement or be

in a position to demand arbitration. Furthermore, a delay of nineteen months after the expiration of the contract does not in itself demonstrate waiver. See Dickinson v. Heinold Sec., Inc., 661 F.2d 638, 641 (7th Cir. 1981). (Eighteen month delay in making arbitration demand did not result in waiver because "[s]ignificant periods of delay prior to the onset of litigation are often necessary to allow the parties to engage in good faith efforts to resolve the controversy without reference to an adjudicatory body."). See also St. Mary's, 969 F.2d at 589 ("A party needs time to assess its options. Weighing options is not normally inconsistent with the exercise of any of those options, and we can envision situations where a party may properly take months before deciding whether to litigate or demand arbitration.")

Neither does Whirlpool's prejudice argument result in waiver. Whirlpool argues that forcing it to arbitrate thousands of appliance component sourcing decisions made during a 10 year period is extremely prejudicial. However, it does not appear to this court that Whirlpool would be made to answer for all sourcing decisions it made during the 10 year period covered by the License Agreement as to all components used in all appliances it manufactures. Rather, Grigoleit would only have a claim regarding components for which Grigoleit could "provide more than parity in technology, quality, service, delivery and price in comparison to other qualified suppliers in the Whirlpool supplier base at such time." There is no indication by Whirlpool that Grigoleit was capable of producing all components for all appliances it manufactures. Furthermore, this same issue may have arisen if Grigoleit would have filed a demand for arbitration prior to September 2003, when the contract was still in force.[1]

---

[1] This court is cognizant that a finding of prejudice is not necessary to making a finding of waiver, but it is a factor that should be considered along with any other relevant factor. St. Mary's, 969 F.2d at 590.

Finally, Whirlpool argues that Grigoleit has waived its right to arbitrate by filing the instant action, which was originally filed in state court and removed by Whirlpool to this court. Courts are to presume that a party implicitly waived its right to arbitrate when it chooses a judicial forum for the resolution of a dispute. Grumhaus v. Comerica Sec., Inc., 223 F.3d 648, 650 (7th Cir. 2000). However, there are situations in which invocation of the judicial process does not signify an intention to proceed in a court to the exclusion of arbitration. Cabinetree of Wisconsin, Inc., v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995). One of these circumstances is where some issues are arbitrable and others are not. Cabinetree, 50 F.3d at 391. In the instant case, Grigoleit filed the complaint in Macon County court two days after its demand for arbitration. In its complaint, Grigoleit acknowledged that an arbitrator is to decide only whether Whirlpool gave serious consideration to Grigoleit by working with and purchasing from Grigoleit various appliance components. Any remaining issues, including damages, would have to be decided by the court. Therefore, this court concludes that Grigoleit did not waive its ability to arbitrate by filing an action in state court.

Whirlpool has filed a Motion for Judgment on the Pleadings arguing that, pursuant to the terms of the Licensing Agreement, Grigoleit was required to make a demand for arbitration that is contemporaneous with Whirlpool's sourcing decisions between the years 1993 and 2003. "If the agreement contains clear and unmistakable evidence that the parties intended for the arbitrator to decide timeliness questions, then the court must allow the arbitrator to make that decision." Chicago Sch. Reform v. Diversified Pharm., 40 F. Supp. 2d 987, 983 (N. D. Ill. 1999). Whirlpool bases this argument on the "at such time" language contained in the portion of the contract setting forth the arbitrable matters. The language states that Whirlpool is not required to pay Grigoleit any royalties

"so long as, in the opinion of an arbitrator established in accordance with the procedures of a recognized and independent arbitration service, Whirlpool continues to give serious consideration to Grigoleit by working with and purchasing from Grigoleit various appliance components, when in regards to such components it is reasonable to believe Grigoleit can provide more than parity in technology, quality, service, delivery and price in comparison to other qualified suppliers in the Whirlpool supplier base at such time."  While the language is unclear as to whether the "at such time" language sets forth a limitation for an arbitration demand, what is clear is that this language is included in the portion of the License Agreement which sets forth the determination to be made by the arbitrator.  Accordingly, this matter must be reserved for the arbitrator and Whirlpool's Motion for Judgment on the Pleadings is denied as MOOT.

       Finally, § 3 of the FAA provides, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.  Based upon the above discussion, this court concludes that the requirements of § 3 have been met.  Accordingly, this matter is stayed pending arbitration.  As a result, the Discovery Order (#10) entered in this matter is VACATED.  The parties are ordered to notify the court at the conclusion of the arbitration proceedings to allow a new discovery schedule to be set.

IT IS THEREFORE ORDERED:

(1) Plaintiff's Motion to Compel Arbitration (#11) is GRANTED.

(2) Defendant's Motion for Judgment on the Pleadings (#24) is denied as MOOT.

(3) This matter is stayed pending arbitration. The Discovery Order (#10) entered in this matter is VACATED. The parties are ordered to notify the court at the conclusion of the arbitration proceedings to allow a new discovery schedule to be set.

ENTERED this 20th day of September, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE