**E-FILED**
Monday, 10 May, 2010  02:08:24 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| THE GRIGOLEIT COMPANY, | ) | |
| A Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 05-CV-2126 |
| | ) | |
| WHIRLPOOL CORPORATION, | ) | |
| A Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Plaintiff, Grigoleit Company, filed a complaint against Defendant Whirlpool Corporation in state court in 2005.  The case was then removed to federal district court.  On September 20, 2005, this court issued a stay on the case while the issue of whether Whirlpool had considered Grigoleit as a supplier for all the components it should have was considered by an arbitrator. That issue is still in pending arbitration.  On October 30, 2009, Whirlpool filed this Partial Motion for Partial Summary Judgment on the Non-Arbitrable Issue of Damages (#40).  Grigoleit filed its Response (#41) on December 11, 2009, followed by Whirlpool's Reply (#48) on January 8, 2010.  For the following reasons, Whirlpool's Motion for Partial Summary Judgment on the Non-Arbitrable Issue of Damages (#40) is GRANTED.

### BACKGROUND

Grigoleit, an Illinois company, is a long time supplier of knobs and other appliance components to Whirlpool, a Delaware corporation with its principal place of business in

Michigan.  In late 1991 Whirlpool instituted a Knob Optimization Program that removed

Grigoleit from Whirlpool's knob supplier base.  Grigoleit asked Whirlpool to reconsider its

decision to remove Grigoleit from the knob supplier base.  When Whirlpool failed to do so,

Grigoleit accused Whirlpool of infringing two Grigoleit patents related to knobs, taking the

position that Whirlpool was purchasing knobs from Phillips Plastic Corporation, a Grigoleit

competitor, that incorporated technology supposedly covered by the Grigoleit patents.

In order to resolve Grigoleit's claim, Whirlpool entered into a License Agreement as of

June 11, 1993.  A provision of the License Agreement entitled "Royalties" is the one at issue in

this case.  It is Paragraph 3 of the Agreement and states:

"Royalties

Whirlpool shall not be obligated to pay Grigoleit any monies as royalties

for the right, license, and privilege granted herein so long as Whirlpool continues

to purchase from Grigoleit Whirlpool's requirement for present styling of knobs

for the "Estate" and "Roper" brand lines of automatic clothes washers and dryers

and so long as, in the opinion of an arbitrator established in accordance with the

procedures of a recognized and independent arbitration service, Whirlpool

continues to give serious consideration to Grigoleit by working with and

purchasing from Grigoleit various appliance components, when in regards to such

components it is reasonable to believe Grigoleit can provide more than parity in

technology, quality, service, delivery and price in comparison to other qualified

suppliers in the Whirlpool supplier base at such time."

Grigoleit concedes that this License Agreement expired by its own terms along with its

patents in 2003.  Grigoleit contends, however, that there were instances during the term of the

Agreement where Whirlpool decided to purchase appliance components from another supplier

without considering Grigoleit, even though it would have been reasonable to believe that

Grigoleit could have provided "more than parity" in terms of technology, quality, service,

delivery and price.  Grigoleit therefore contends that Whirlpool breached its obligations under

the License Agreement.  Grigoleit asserts that its damages for Whirlpool's alleged breach is the

"benefit of the bargain" Grigoleit should have enjoyed- its lost profits on the appliance

components Whirlpool sourced with other suppliers without giving serious consideration to

Grigoleit.  As dictated by the License Agreement, Grigoleit submitted to arbitration the question

of whether there were supply opportunities with respect to which Grigoleit could have offered

"more than parity" in the various categories.[1]

### WHIRLPOOL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In its Motion, Whirlpool argues that the provision in the License Agreement regarding

the consideration of Grigoleit as a supplier is a condition, not a promise.  Whirlpool argues that

Paragraph 3 contains no words of promise and that Whirlpool did not agree to continue to

purchase the specified product from Grigoleit or give it consideration.  Rather, Whirlpool

contends, Grigoleit granted them the right to use the licensed technology without paying

---

[1]In its Response, Grigoleit listed 22 further "Additional Material Facts" that concern the growing dispute between 1993 and 2003 concerning Whirlpool's obligations to consider Grigoleit as a supplier under the License Agreement.  The court believes that these facts are more germane to the issue before the arbitrator, as opposed to the issue of damages that is now before this court.  The court agrees with Whirlpool's assertion that Grigoleit's Additional Material Facts are immaterial because they "do not affect Whirlpool's entitlement to the relief requested" and "are irrelevant to the damages and contract interpretation issues before the Court."

royalties "so long as" it continued to give Grigoleit consideration.  The words "so long as" are, in this provision, words of condition.  The only promise in the Agreement is that Grigoleit would allow Whirlpool to use the licensed technology without royalty payments, creating a unilateral contract.  This promise, however, was conditioned upon Whirlpool continuing to purchase certain products and giving Grigoleit consideration for other products.  Nowhere in the License Agreement or elsewhere did Whirlpool promise in return to satisfy the condition.  Whirlpool is not subject to liability for breach of contract for failure to satisfy these conditions and a claim for lost profits.  Further, failure to fulfill a contract condition, rather than a contract promise, does not entitle Grigoleit to consequential damages in the form of profit lost on each supply opportunity for which it was not considered.  Whirlpool's failure to fulfill the condition then waives Grigoleit's obligation not to charge Whirlpool royalties for the use of Grigoleit's patented technology.

GRIGOLEIT'S RESPONSE

In its Response, Grigoleit argues that the contract in question is ambiguous, and thus a factual question is presented as to the meaning of its provisions and the intent of the parties in entering the contract.  By using extrinsic evidence, Grigoleit argues, prongs 1 and 2 of Paragraph 3 of the Licensing Agreement are shown to be promises, not conditions.  Grigoleit claims that "so long as" is used in the same sense as "with the understanding that."  "So long as" was used to make the events set forth in prongs 1 and 2 of Paragraph 3 *obligations*, not conditions.  Grigoleit further argues that interpreting "so long as" the same as "with the understanding that" as creating promises or covenants by Whirlpool to perform prongs 1 and 2 for the duration of the Agreement is consistent with the provisions of the Licensing Agreement as a whole.  Grigoleit

-4-

claims the grant by Grigoleit to Whirlpool was not a "royalty free" license, but rather the consideration to Grigoleit for the right, license, and privilege granted "was in the form of a promise to source purchases, the measure of non-monies royalties."  Grigoleit also argues that a money-royalty is inconsistent with the Licensing Agreement, because if the parties had already set up a provision for an arbitrator to resolve issues that might arise with respect to Whirlpool's performance under prong 2, why did they not provide for an arbitrator or other means of determining a reasonable royalty in the event of a non-occurrence of either condition?  "Further, if 'so long as' creates a condition on the freedom from paying royalties and Grigoleit is only entitled to payment of money royalties, this suggests that the language 'Whirlpool shall not be obligated to pay Grigoleit any monies as royalties for the right, license, and privilege granted herein so long as" would create a remedy limitation, inconsistent with the language of Paragraph 5 allowing permissive termination by either party in the event of a breach, 'in addition to all the remedies available to it at law or inequity.'"

In the alternative, Grigoleit argues that if prongs 1 and 2 are deemed to be conditions on the freedom from paying monies as royalties, then by implication Defendant promised to pay royalties if Whirlpool did not perform prongs 1 or 2, making it a "promise conditional." Therefore, Whirlpool's implied promise to pay money royalties conditioned on a performance of prongs 1 and 2 by Whirlpool, as promisor, is a promise of alternative performances, as each of the alternative performances would have been consideration if it alone had been bargained for. Grigoleit argues that the damages for breach of an alternative contract are determined in accordance with that one of the alternatives that is chosen by the party having an election, or in case of breach without an election, in accordance with the alternative test that will result in the

smallest recovery.  Grigoleit points to an October 1994 letter from Whirlpool in which Whirlpool notified Grigoleit that Whirlpool had fully complied with the terms of the Agreement and intended to continue such compliance in the future and that it would continue to purchase from Grigoleit its requirements for present styling of knobs for the "Estate" and "Roper" brand lines of automatic clothes washers and dryers.  Whirlpool in that letter asserted that it continued to give Grigoleit serious consideration as a supplier for various appliance components.  Grigoleit concludes that

> "Whirlpool's statement of position in its October 3, 1994 letter constitutes an election of an alternative to perform Prongs 1 and 2 of Paragraph 3 and Whirlpool did not change its position for the duration of the License Agreement which expired by its terms September 2003.  Further, Whirlpool did not pay 'monies' as royalties to Grigoleit for the right, license, and privilege granted by Grigoleit at any time during the term of the License Agreement, not did Whirlpool at any time notify Grigoleit of any desire or intention to pay "monies" as royalties.  Grigoleit, in the event of a breach of that alternative elected by Whirlpool, would be entitled to lost profits as a result from the breach of Prong 2 of Paragraph 3."

Grigoleit also argues, in a third alternative, that if the court finds the language of the License Agreements are conditions as relates to prongs 1 and 2 of Paragraph 3, then "genuine issues of material fact exist regarding interpretation of the Contract's terms in light of the apparent purpose of the Contract as a whole, the rules of Contract construction and extrinsic evidence of intent and meaning."

WHIRLPOOL'S REPLY

In reply, Whirlpool rejected Grigoleit's assertion that "with the understanding" creates an obligation. Rather, the case law supports the idea that "with the understanding" creates a condition. Further, Grigoleit's claim that the provision at issue should be read as an obligation because Paragraph 5 provides for contract termination if either party fails to meet their "obligations" is also incorrect. Paragraph 5's reference to each party's obligations is general, whereas Paragraph 3 specifically designates prongs 1 and 2 as conditions, and a general provision such as Paragraph 5 cannot trump a specific one like Paragraph 3. Further, there are other obligations contained in the Agreement that Paragraph 5 could have been referring to.

As to Grigoleit's argument that the Agreement should be interpreted as a promise by Whirlpool to give consideration to Grigoleit for supply opportunities because that would be consistent with what Grigoleit now claims was the parties' intent, Whirlpool disputes that any such interpretation is needed because the Agreement is unambiguous. Grigoleit has failed to identify any ambiguity in the agreement and "cannot use its version of the parties' intent to create one." With regard to any internal inconsistency over arbitration, Whirlpool contends that the Agreement is clear that the only power the arbitrator has is to determine whether serious consideration was given by Whirlpool to Grigoleit as a appliance supplier. The arbitrator does not have the power to decide damages, whether they be lost profits or money royalties. Further, even if Grigoleit was successful in pointing out some ambiguity in the Agreement, the documents show that Grigoleit viewed prongs 1 and 2 as conditional, and if those conditions were not met, Whirlpool would owe royalties (See Grigoleit's letters of August 26, 1994, and July 12, 1995). Finally, Whirlpool points to the title "License Agreement" and the provision

-7-

"Royalties" themselves from the contract, and notes that if the contract was *really* about providing Grigoleit future supply opportunities, "it is difficult to understand why the arrangement was set out in a contract called a "License Agreement," and this key provision was buried in a paragraph titled "Royalties."

As to the Licensing Agreement being a "Contract with Alternative Promises," Whirlpool disputes that contention as well. First, Whirlpool disputes Grigoleit's argument that Whirlpool made a "conditional promise," whereby Whirlpool has made "an implied promise to pay money royalties conditioned on a performance of Prongs 1 and 2 by Whirlpool." Grigoleit argues that Whirlpool promises to pay royalties, conditioned on Whirlpool's own performance of the conditions. Whirlpool argues that it made no promises, conditional or otherwise, and that Grigoleit has it backwards: the only promise contained in Paragraph 3 is Grigoleit's promise that it would allow Whirlpool to use the licensed technology without royalty payments if Whirlpool continued to purchase certain products and give Grigoleit consideration for other products.

In regards to Grigoleit's claim of "alternative promises," Whirlpool claims no such promises were made. Whirlpool notes that the case law cited by Grigoleit on alternative promises shows that such promises contain language like "may either" and "or." No such language can be found in Paragraph 3. Nor did Whirlpool make any such "election" to continue to satisfy prongs 1 and 2 of Paragraph 3 instead of paying royalties. All the correspondence between Grigoleit and Whirlpool reveals is that Whirlpool was asserting that it had not failed to consider Grigoleit for opportunities. There is no admission of an obligation to give that consideration, nor is it an "election" by Whirlpool of such an obligation over the payment of royalties. Rather, "[i]t is simply an assertion that Whirlpool was continuing to satisfy the

conditions that allowed it to use the licensed technology without payment of royalties."

ANALYSIS

I.       ARE PRONGS 1 AND 2 OF PARAGRAPH 3 CONDITIONS OR PROMISES?

The law presumes that the parties to a contract understand the import of the contract and had the intention manifested by its terms.  Birchcrest Building Co. v. Plaskove, 120 N.W.2d 819, 823 (Mich. 1963).  To interpret the parties' intent, a court reads the agreement as a whole and attempts to apply the plain language of the contract itself.  Old Kent Bank v. Sobczak, 620 N.W.2d 663, 666-67 (Mich. Ct. App. 2000).  A fundamental tenet of contractual jurisprudence in Michigan[2] "is that unambiguous contracts are not open to judicial construction and must be *enforced as written.*"  Rory v. Continental Ins. Co., 703 N.W.2d 23, 30 (Mich. 2005) (emphasis in original).  Contracts are enforced according to their unambiguous terms because doing so respects the freedom of individuals to freely arrange their affairs via contract.  Rory, 703 N.W.2d at 30.

However, where a contract is ambiguous, a factual question is presented as to the meaning of its provisions and the intent of the parties in entering the contract.  Klapp v. United Ins. Group Agency, Inc., 663 N.W.2d 447, 453-54 (Mich. 2003).  The trier of fact can consider extrinsic evidence in resolving a contract whose language is ambiguous.  Klapp, 663 N.W.2d at 454.  Admissible extrinsic evidence would include evidence of the contemporaneous understanding of the parties, such as the parties' conduct, representative statements, and past

---

[2]The governing state law in this case will be that of Michigan, as designated in paragraph 10 of the Licensing Agreement:
"This License Agreement shall be interpreted and construed and the legal relations covered herein shall be determined in accordance with the laws of the State of Michigan."

practices.  Klapp, 663 N.W.2d at 454.  Courts can also look to dictionary definitions of the terms

at issue.  See Turner Holdings, Inc. v. Howard Miller Clock Co., 657 F.Supp. 1370, 1380 (W.D.

Mich. 1987).

     The main area of contention between the parties is whether prongs 1 and 2 of Paragraph

3, in which Whirlpool does not have to pay royalties to Grigoleit so long as Whirlpool continues

to purchase knobs for its Roper and Estate lines from Grigoleit and continues to give Grigoleit

serious consideration in other product line purchases, constitutes a condition or a promise.  A

promise is defined thusly in the Restatements:

     "A promise is a manifestation of the intention to act or refrain from acting

in a specified way, so made as to justify a promisee in understanding that a

commitment has been made."  Restatement (Second) of Contracts § 2(1) (1981).

A condition, on the other hand, is defined by the Restatement as

     "an event, not certain to occur, which must occur, unless its

nonoccurrence is excused, before performance under a contract becomes due."

Restatement (Second) of Contracts § 224 (1981).

The effects of the non-occurrence of a condition are

     "(1) Performance of a duty subject to a condition cannot become due

unless the condition occurs or its non-occurrence is excused.

     (2) Unless it has been excused, the non-occurrence of a condition

discharges the duty when the condition can no longer occur.

     (3) Non-occurrence of a condition is not a breach by a party unless the

party is under a duty that the condition occur."  Restatement (Second) of

-10-

Contracts § 225 (1981).

An example of a contract term that makes an event a condition of an obligation, but does not itself impose a duty, can be found in the Restatement:

> "A, a shipowner, promises to carry B's cargo on his ship to Portsmouth.  B promises to pay A the stipulated freight on condition that A's ship sail directly there on its next sailing.  A's ship carries B's cargo to Portsmouth, but puts into port on the way.  Since carrying B's cargo directly to Portsmouth is a condition of B's duty, no duty to pay arises, and, since the condition can no longer occur, B's duty is discharged.  Since A is under no duty to carry B's cargo directly to Portsmouth, however, his failure to do so is not a breach."  Restatement (Second) of Contracts, § 225, Illustration 6 (1981).

A condition and a promise are not the same.  The Michigan Supreme Court has held: "A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor."  Knox v. Knox, 59 N.W.2d 108, 112 (Mich. 1953). "Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract."  Knox, 59 N.W.2d at 112-13.   However, courts have been disinclined "to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed.  The reason of this disinclination is that such a construction prevents the court from dealing out justice to the parties according to the equity of the case."  Knox, 59 N.W.2d at 113.

The Restatement has recognized that, while no particular words are necessary to create a condition, "such words as 'on condition that,' 'provided that,' and 'if' are often used for this purpose."  Restatement (Second) of Contracts, § 226 comment a (1981).

After reviewing the filings and the arguments of the parties, the court finds the position advanced by Whirlpool to be more persuasive.  First, the court finds the Licensing Agreement provision at issue to be unambiguous.  There is no need to bring in the extrinsic evidence, especially as much of that evidence in the form of the letters exchanged between the parties, is from 1994-2000, the years *after* the execution of the Licensing Agreement.  Further, the extrinsic evidence is conflicting, as Grigoleit sometimes claims it just wants royalties for Whirlpool's failure to give serious consideration[3] and other times seeming to imply it did not care about royalties, but rather valued the business opportunities.[4]

As the court has found the provision unambiguous, the court will interpret it just in light of the Licensing Agreement.  While it is true that the Agreement makes reference to "obligations" of the parties in Paragraph 5, the court agrees with Whirlpool that the reference is a general one.  The provision in Paragraph 3 is specific, and therefore it will be interpreted standing on its own.  It is clear to the court what both parties set out to do in Paragraph 3:

---

[3]See Exhibit 4 to Grigoleit's Response (#41), a letter dated August 26, 1994, from Grigoleit Sales Manager Joel A. Winick to Doug Adams, Whirlpool Procurement Manager, in which Winick states: "Grigoleit believes that Whirlpool has failed for some time to live up to its obligations per the June 11, 1993, agreement.  Given this failure by Whirlpool and Whirlpool's stated future sourcing direction for knobs, we consider that royalties are due Griogleit."

[4]In Winick's January 2008, page 176, (filed as Exhibit 1 to Grigoleit's Response (#40) deposition he stated "Whirlpool was not interested in paying Grigoleit a royalty.  Grigoleit's primary interest was not in collecting a royalty in terms of money.  So that was perfectly okay with us.  Our preference was business."

Grigoleit was giving Whirlpool permission to use its technology, without having to pay royalties, as long as Whirlpool continued to purchase knobs for its Estate and Roper lines from Grigoleit and so long as Whirlpool continued to give serious consideration to Grigoleit as a supplier for other product lines.  There is only one promise contained in that paragraph: that Whirlpool was allowed to use Grigoleit technology without paying royalties.  However, there was a condition attached: if Whirlpool did not satisfy either of the two prongs, they would have to pay Grigoleit royalties.  The plain, ordinary and reasonable meaning of this section of the Licensing Agreement is that Grigoleit promised to let Whirlpool use the technology without paying royalties and the provisions in prongs 1 and 2 were only conditions.  The use of the term "so long as" is not consistent, in this case, with a separate promise on Whirlpool's part to give Grigoleit serious consideration.  No words such as "will" or "shall" were used in regard to Whirlpool giving that consideration.  "Shall" was used in connection with Grigoleit not obliging Whirlpool to pay royalties.  That established a promise on Grigoleit's part.  "So long as," however, as part of the same sentence, served to modify Grigoleit's promise not to seek royalties as conditional on Whirlpool's giving serious consideration to Whirlpool for future appliance needs.

The court agrees with Whirlpool that this case is analogous to the example from the Restatements concerning the boat shipping contract.  As in that case, giving serious consideration to Grigoleit in working with and purchasing appliance components from them is a condition of Grigoleit's duty not to seek royalties, and when the condition fails to occur, no duty to waive royalties arises on Grigoleit's part.  Grigoleit's duty to waive royalties is discharged.  However, since Whirlpool was under no duty to give serious consideration to Grigoleit,

Whirlpool's failure to do so is not a breach.  See Restatements (Second) of Contracts § 225,

Illustration 6 (1981).  While Whirlpool's failure to fulfill a condition excuses performance by

Grigoleit of not seeking royalties, Whirlpool's failure is not, without an independent promise to

perform the condition, a breach of contract subjecting Whirlpool to liability for damages.  See

Restatement (Second) of Contracts § 225(1), (3) (1981).

## II. ALTERNATIVE PROMISES?

In the alternative to its position that prongs 1 and 2 of Paragraph 3 represented

obligations on Whirlpool's part, Grigoleit argues that if those prongs are deemed to be

conditions on the freedom from paying royalties, then by implication Whirlpool promised to pay

royalties if it did not perform those prongs.  In support of this position, Grigoleit cites to the

Restatement:

"A promise conditional on a performance by the promisor is a promise of

alternative performance within § 77 unless occurrence of the condition is also

promised."  Restatement (Second) of Contracts § 76(2) (1981).

§ 77 states:

"A promise or apparent promise is not consideration if by its terms the

promisor or purported promisor reserves a choice of alternative performances

unless

(a) each of the alternative performances would have been consideration if

it alone had been bargained for; or

(b) one of the alternative performances would have been consideration and

there is or appears to the parties to be a substantial possibility that before the

-14-

promisor exercises his choice events may eliminate the alternatives which would

not have been consideration."   Restatement (Second) of Contracts § 77 (1981).

Comment b to § 77, entitled "Alternative promises," states:

> "A promise in the alternative may be made because each of the alternative
> performances is the object of desire to the promisee.  Or the promisee may desire
> one performance only, but the promisor may reserve an alternative which he may
> deem advantageous.  In either type of case, the promise is consideration if it
> cannot be kept without some action or forbearance which would be consideration
> if it alone were bargained for.  But if the promisor has an unfettered choice of
> alternatives, and one alternative would have been consideration if separately
> bargained for, the promise in the alternative is not consideration."  Restatement
> (Second) of Contracts § 77, comment b (1981).

The court agrees with Whirlpool that prongs 1 and 2 of Paragraph 3 were not "alternative

promises."  Whirlpool notes that Grigoleit relies on Restatement § 77, which deals with whether

a promise that reserves a choice between alternative performances is adequate consideration for

a contract.  Rather, the real question before the court is whether *there is any promise of*

*alternative performances*.  There simply is no promissory language used in prongs 1 and 2

relating to Whirlpool's purchasing of knobs for the Estate and Roper series and their serious

consideration of Grigoleit as a future supplier.  As Whirlpool points out, the language in the

cases cited by Grigoleit that involve alternative promises are not present in Paragraph 3.  See

Fidelity Federal Savings & Loan Assoc. v. Pioneer National Title Ins. Co., 428 F.Supp. 1382,

1384, n. 1 (S.D. Ill. 1977) (Alternative performance election provisions contained the key words

"may either" and "or").

Grigoleit's argument seeks to make the interpretation of the License Agreement's Paragraph 3 complicated instead of simple.  It asks the court to find a promise or promise of alternative performances where there is none.  Whirlpool has not promised to Grigoleit to undertake one performance or the other.  They have not made an election to follow through on one of their promises at the expense of the alternate promise.  Rather, as determined above, the promise made was from Grigoleit to Whirlpool that Whirlpool could use Grigoleit's patented technology without paying royalties.  As a condition of that promise, however, Grigoleit was to (1) continue to purchase from Grigoleit Whirlpool's requirement for present styling of knobs for the "Estate" and "Roper" brand lines of automatic clothes washers and dryers and (2) continue to give serious consideration to Grigoleit by working with and purchasing from Grigoleit various appliance components, lest Whirlpool forfeit its ability to use the technology royalty-free. Therefore, as the provisions in question constituted conditions and not promises, Grigoleit is entitled to money royalties and not breach of contract damages if Whirlpool is found to have not fulfilled the conditions.  Whirlpool's Partial Motion for Summary Judgment on the Non-Arbitrable Issue of Damages (#40) is GRANTED.

IT IS THEREFORE ORDERED:

Whirlpool's Motion for Partial Summary Judgment on the Non-Arbitrable Issue of Damages (#40) is GRANTED.  Grigoleit may only recover the money royalties, and not breach of contract damages, if Whirlpool is found by the arbitrator to be in violation of the License Agreement.

ENTERED this 10th day of May, 2010

-16-

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE